UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In Re:

    Magnale Farms, LLC,                            Case No.: 17-61344
                                                                   Chapter 12

                                Debtor(s).

_____

APPEARANCES:

Peter Alan Orville, Esq.
Orville & McDonald Law, P.C.
*Attorneys for Magnale, LLC*
30 Riverside Drive
Binghamton, New York 13905

Paul M. Freeman, Esq.
Freeman Howard, P.C.
*Attorneys for National Union Bank of Kinderhook*
441 E. Allen Street
P.O. Box 1328
Hudson, New York 12534

William F. Larkin, Esq.
Assistant United States Attorney
United States Department of Justice
*Of Counsel to the Internal Revenue Service and*
*United States Department of Agriculture*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

Merritt S. Locke, Esq.
Saunders Kahler, L.L.P.
*Attorneys for Mohawk Valley Rehabilitation Corporation*
185 Genesee Street, Suite 1400
Utica, New York 13501-2194

Mark W. Swimelar, Esq.
Standing Chapter 12 Trustee
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

*I. Introduction*

Pending before the Court is the March 8, 2018 motion of Debtor, Magnale Farms, LLC ("Debtor"), seeking entry of an order granting a stay pending appeal of this Court's February 14, 2018 order granting National Union Bank of Kinderhook ("Kinderhook") relief from the automatic stay (the "Motion," ECF No. 78). On February 8, 2018, the Court issued a Letter-Decision and Order granting Kinderhook relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and 362(d)(4) with respect to Debtor's real property located at 434 Bed Bug Hill Road in Fly Creek, New York (the "Property") (the "LDO," ECF No. 63).[1] The Court therein directed Kinderhook to submit a separate order that included a description of the Property and such other information as may have been required by the Otsego County Clerk, which Kinderhook submitted and the Court issued on February 14, 2018 (the "Stay Order," ECF No. 65). For the reasons set forth below, Debtor's Motion is denied.

*II. Jurisdiction*

The Court has subject matter jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a), (b)(1), and (b)(2)(A). The Motion is properly before this Court pursuant to Federal Rule of Bankruptcy Procedure 8007(a)(1)(A).[2]

*III. Factual and Procedural Background*

As familiarly with the LDO and Stay Order is assumed, the Court will not restate the findings of fact and conclusions of law set forth therein and will use all terms defined therein for consistency. The Court notes that Debtor timely filed a Notice of Appeal on February 26, 2018 (ECF No. 66), which does not divest this Court of jurisdiction to hear the Motion. *See* Fed. R.

---

[1] All chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2012) (the "Bankruptcy Code").
[2] All rule references are to the Federal Rules of Bankruptcy Procedure.

Bankr. P. 8007(a)(2) ("The motion may be made either before or after the notice of appeal is filed.").

In support of the Motion, Debtor filed supplemental papers on March 21, 2018. (ECF No. 85.) On March 22, 2018, Debtor filed a Certificate of Property Insurance dated February 1, 2018, showing proof of insurance issued by National Casualty Company naming Kinderhook as a Certificate Holder on blanket coverage for the building with a limit of $2,155,452.00, and on the personal property with a limit of $500,000.00 (the "COI," ECF No. 88). On March 26, 2018, Debtor also filed a Certificate of Insurance and Declarations Page issued by National Casualty Company to Debtor for the coverage period of January 4, 2018, through January 4, 2019. (ECF No. 92.) As stated in Debtor's counsel's correspondence, Kinderhook was added as a loss payee to the COI on February 1, 2018.

Kinderhook filed Opposition to the Motion on March 14, 2018 (ECF No. 83), which it amended on the same date (ECF No. 84). The Internal Revenue Service ("IRS") and United States Department of Agriculture ("USDA"), on behalf of the Farm Services Agency ("FSA"), filed joint Opposition to the Motion on March 15, 2018. (ECF No. 84.)

The Court heard oral argument on the Motion on March 22, 2018. Debtor, Mark W. Swimelar, Esq., as Standing Chapter 12 Trustee, Kinderhook, IRS, USDA, and Mohawk Valley Rehabilitation Corporation ("MORECO") appeared through their respective counsels. Following oral argument, the Court took the matter under advisement.

*IV. Arguments[3]*

In support of the Motion, Debtor's arguments focus mainly on the parties' respective harms that would result from this Court's grant or denial of a stay pending appeal, as well as Debtor's

---

[3] Although MORECO's counsel, Merritt S. Locke, Esq., appeared and placed limited arguments on the record, MORECO did not file papers in support or in opposition to the Motion. To the extent Attorney Locke argued in favor of the Motion and a stay pending appeal, the Court has considered MORECO's arguments and determined that they do not alter the outcome of its decision.

ability to succeed on appeal. With respect to the former, Debtor contends that the LLC, its principal and sole member James Giombetti, and Mr. Giombetti's wife would suffer irreparable harm in the absence of a stay pending appeal because Debtor's loss of the Property would render its appeal moot and result in the cessation of the business and loss of the Giombettis' personal investment in the Property. As to Kinderhook, Debtor asserts that a stay pending appeal and any resultant delay of Kinderhook's foreclosure sale on the Property would not cause any harm to Kinderhook because it would be paid in full at the end of the reorganization process. With respect to the latter, Debtor argues that it will succeed on appeal because the Court's § 362(d) ruling in Kinderhook's favor is premised on the following erroneous findings: (1) Kinderhook's secured interest was not adequately protected and Kinderhook was entitled to relief under § 362(d)(1); (2) Debtor's failure to comply with the Interim Order and failure to provide proof of insurance and property tax payments constituted "cause" under subsection (d)(1); (3) Debtor proffered unrealistic projections such that the Amended Plan was not feasible and confirmable as a matter of law; (4) Kinderhook was entitled to in rem relief under § 362(d)(4)(B) because Debtor's current case is part of a scheme to hinder or delay Kinderhook's foreclosure efforts; and (5) Debtor does not have the means or ability to reorganize by virtue of a confirmable plan and Debtor has not made any meaningful progress towards reorganization since it first filed Magnale I in 2015.

To support its specific assertions of error, Debtor's counsel again indicated on the record that Debtor is in the midst of negotiating replacement debtor-in-possession ("DIP") financing with a new lender. Notwithstanding that Debtor did not have a firm commitment at the time, counsel represented that the loan could likely close within two months. In addition, Debtor's counsel advised that Debtor had obtained casualty insurance for the Property, with Kinderhook as a named loss payee.

Finally, Debtor argues that the Court procedurally mishandled Kinderhook's § 362(d) motion and denied it due process by failing to conduct a full evidentiary hearing on confirmation of the Amended Plan and valuation of the Property.

Kinderhook first contends that *Ellis v. NBT Bank, N.A.*, No. 5:12-cv-01803 (MAD), 2013 U.S. Dist. LEXIS 4318 (N.D.N.Y. 2013), is controlling because this matter is analogous to the facts of that case. Kinderhook next contends that the counterbalancing of factors weighs against a stay pending appeal in this case because Debtor cannot establish a substantial possibility of success on appeal, and a stay pending appeal would impose significant financial harm on Kinderhook. Kinderhook asserts that Debtor, as it has consistently done during the course of Magnale I, Magnale II, and Magnale III, relies upon mere conclusory statements or promises of new financing, without providing supporting factual evidence of its timely compliance with its existing obligations under the Bankruptcy Code or its future ability to successfully reorganize. Specifically, Kinderhook argues that the fact that equity may exist in the Property does not relieve Debtor of the obligation to make contractual mortgage payments to a secured creditor, as stated in *In re Lord*, 325 B.R. 121, 129 (S.D.N.Y. 2005). Kinderhook also asserts that Debtor has not provided any legal basis to excuse Debtor from timely complying with the Interim Order or its insurance obligations. Kinderhook contends that, as of January 17, 2018, the arrearage on its debt totaled approximately $740,000.00. This constitutes an increase of $497,528.39 since Debtor's filing of Magnale I in 2015.[4] Accordingly, Kinderhook asserts that it will continue to suffer financial harm if the Motion is granted.

FSA similarly contends that the Motion should be denied because Debtor cannot establish a substantial possibility of success on appeal. FSA contends that the Court's grant of § 362(d)(1) relief was correct for the following reasons: (1) Debtor failed to timely make the adequate

---

[4] This aggregate arrearage is taken from the Magnale I Claims Register; Proof of Claim Numbers 4 and 5.

protection payment to Kinderhook as required by the Interim Order; (2) Debtor failed to provide proof of property and casualty insurance; (3) Debtor's projections were unrealistic; (4) Debtor failed to make regular monthly mortgage payments to Kinderhook; (5) Debtor failed to pay the annual real estate taxes in the amount of $22,000.00; and (6) Debtor failed to pay the annual property/casualty insurance premium of $41,000.00. Additionally, FSA points out that all three of Debtor's monthly operating reports showed miniscule income or continuing losses, with these losses potentially being far greater had Debtor made or accounted for the mortgage payments, annual real estate taxes, and property insurance, which alone would have required a monthly payment of $18,750.00. FSA also contends that the Court's grant of § 362(d)(4)(B) relief was correct because Debtor did not appeal the dismissal of Magnale I, but rather filed the current case as an impermissible collateral challenge to that dismissal.

Both Kinderhook and FSA refute Debtor's due process challenge. Kinderhook and FSA argue that Debtor has had more than enough time and opportunity to prove to the Court and to its creditors that it could successfully reorganize. Notwithstanding, Debtor has failed to do so. In fact, Kinderhook and FSA suggest that Debtor cannot reorganize because Debtor's business model and, by extension, its reorganization plan, are unworkable and fundamentally flawed.

V. *Discussion*

A stay pending appeal "involves extraordinary relief and the discretion of the court." *In re Pine Lake Village Apartment Co.*, 21 B.R. 395, 398 (S.D.N.Y. 1982) (citing *Resident Advisory Board v. Rizzo*, 429 F. Supp. 222, 224 (D. Pa. 1977)). "Stays pending appeal are the exception, not the rule, and are granted only in limited circumstances." *In re Taub*, Chapter 11 Case No. 08-44210-ess, 2010 Bankr. LEXIS 3458 (Bankr. E.D.N.Y. Oct. 1, 2010), at *7 (citing *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 105 F.3d 837, 840 (2d Cir. 1997); *In re Aston Baker*, No. CV-05-3487 (CPS), 2005 U.S. Dist. LEXIS 36969, at *10–11 (E.D.N.Y. Aug. 31, 2005)). A movant

seeking a stay pending appeal under Rule 8007 bears the heavy burden of proving that it is entitled to a stay. *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005).

In the Second Circuit, the standard governing the entry of a stay pending appeal is comprised of four factors: (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and (4) the public interests that may be affected. *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (internal quotation marks and citations omitted). As Kinderhook and FSA argue, a number of lower courts within the Second Circuit have concluded that failure of the movant to satisfy any one of the four factors on a motion for a stay pending appeal of a bankruptcy court order is fatal. *See ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, 361 B.R. 337, 346–47 n. 33 (S.D.N.Y. 2007) (collecting cases); *accord Turner v. Citizens Nat'l Bank (In re Turner)*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997) ("Failure to satisfy one prong of this standard for granting a stay will doom the motion.") (citing *Bijan-Sara Corp. v. Federal Deposit Ins. Corp. (In re Bijan-Sara Corp.)*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (citing *Green Point Bank v. Treston*, 188 B.R. 9, 12 (S.D.N.Y. 1995))). "However, the Second Circuit has never articulated such a rigid rule of law. To the contrary, the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *In re Adelphia Communs. Corp.*, 361 B.R. at 347 n. 34 (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citing *Ofosu v. McElroy*, 98 F.3d 694, 703 (2d Cir. 1996)); *Hirschfeld*, 984 F.2d at 39)); *Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*, 504 B.R. 754, 759 (S.D.N.Y. 2014) (Lack of any one factor is therefore not dispositive to the success of the motion, "'rather the inquiry represents a balancing of the four factors.'") (quoting *Rally Auto Group, Inc.*

*v. General Motors LLC (In re Motors Liquidation Co.),* No. M-47, 2010 U.S. Dist. LEXIS 118166, at *3 (S.D.N.Y. Oct. 29, 2010)).

Here, the Court will weigh the factors, taking into account the full record and parties' arguments.[5] Even under the less stringent standard, Debtor's Motion must be denied.

*1. Irreparable Injury to Debtor*

"Irreparable harm must be 'neither remote nor speculative, but actual and imminent.'" *Id.* at 347 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). In order to satisfy this factor, Debtor relies upon the judicially-created mootness rule. Under this rule, appellate courts have dismissed as moot appeals of orders lifting the automatic stay where property that was previously subject to the stay has already been sold pursuant to the bankruptcy court's order. *NKL Enters., LLC v. Oyster Bay Mgmt. Co., LLC*, No. 12 cv-5091 (ADS), 2013 U.S. Dist. LEXIS 59479, at *12–13 (E.D.N.Y. Apr. 25, 2013) (examining the origins and application of the mootness rule).

Absent a stay pending appeal, "[t]he law is clear that once a foreclosure sale has taken place, the appeal is moot." *Young v. Shabot (In re Young)*, No. 00-5033, 2000 U.S. App. LEXIS 29699, at *3 (2d Cir. Nov. 22, 2000) (citing *In re Gucci*, 105 F.3d at 839). Less clear, however, is whether mootness in and of itself constitutes irreparable injury. *Compare, e.g., Country Squire Assocs., L.P. v. Rochester Community Sav. Bank (In re Country Squire Assocs., L.P.)*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (mootness of an appeal due to a foreclosure sale would be the "quintessential form of prejudice" to movant) (internal quotation marks and citation omitted), *with Laroe Estates, Inc. v. TD Bank, N.A. (In re 473 W. End Realty Corp.)*, No. 14 MC 103; 14 CV

---

[5] Both Kinderhook and FSA argue that the Court should apply the holdings in *Ellis* here. Without further discussion, the Court notes however that *Ellis* is both distinguishable and non-controlling. A decision issued by a single district judge in a multi-judge district is not binding on the bankruptcy court. In the Northern District of New York, which has both a multi-judge bankruptcy court and a multi-judge district court, only decisions of the United States Court of Appeals for the Second Circuit are controlling. *In re 400 Madison Ave. Ltd. Pshp.*, 213 B.R. 888, 890 n.2 (S.D.N.Y. 1997) (citing cases).

2321, 2014 U.S. Dist. LEXIS 77036, at *5 (S.D.N.Y. May 12, 2014) ("the risk of mooting an appeal does not constitute irreparable injury when, as here, the appeal is unlikely to succeed.") (internal quotation marks and citation omitted), *and In re Richmond*, Chapter 13 Case No. 14-41678 (CEC), 2014 Bankr. LEXIS 4332, at *10–11 (Bankr. E.D.N.Y. Oct. 10, 2014) ("'[A]bsent special circumstances, the sale of commercial property does not create an irreparable harm, since any harm due to the sale of the property or interference with the business can be remedied with monetary damages.'") (quoting *Javino v. Pergament*, No. 13-CV-1951 (WFK) (ETB), 2013 U.S. Dist. LEXIS 67045, at *3 (E.D.N.Y. May 10, 2013) (citing *In re Taub*, 470 B.R. at 278; *Dexter 345 Inc. v. Cuomo,* No. 11 CIV. 1319, 2011 U.S. Dist. LEXIS 48202, at *6–7 (S.D.N.Y. May 3, 2011)).

In this Court's view, the latter approach—treating the question of whether the loss of property can create irreparable injury as a fact-sensitive inquiry—is preferable. This approach recognizes that § 362 relief is routinely granted in bankruptcy cases, and it ensures against the misuse of Rule 8007 in cases where a foreclosure action is pending or a judgment of foreclosure has been obtained.

Preliminarily, the Court considers two facts in assessing Debtor's assertion of irreparable harm. First, since Debtor has not shown a profit since the inception of the business, loss of the business itself would not be financially damaging to Debtor. Second, Debtor has not shown that it could propose a confirmable plan. *In re 473 W. End Realty Corp.,* 2014 U.S. Dist. LEXIS 77036, at *5 ("[L]osing the chance to propose a reorganization plan cannot amount to irreparable injury if there is no hope of confirming the plan."). Both of these facts weigh against Debtor. However, this case presents special circumstances. As stated above, the Property is owned by Debtor and Debtor's loss of the Property would have catastrophic financial and practical repercussions for the Giombettis personally. Not only have they invested significant sums of money, in the approximate

amount of $1.7 million, to make capital improvements to the Property and operate the business, they also reside there. For this reason, and notwithstanding the Court's belief that there is little possibility Debtor can or will succeed on appeal for the reasons discussed below, Debtor has demonstrated irreparable harm in the absence of a stay pending appeal.

2. *Substantial Injury to Kinderhook and Other Parties*

"In addition to showing irreparable harm, the party seeking a stay must also establish that the non-moving party or other parties will not suffer substantial harm if the stay is granted. In other words, the moving party must show that the balance of harms favors granting the stay." *In re 473 West End Realty Corp.,* 507 B.R. at 507-08 (citing *Adelphia*, 361 B.R. at 347-49).

Debtor relies solely upon the alleged fair market value of the Property in support of its argument that equity alone protects Kinderhook, as well as other creditors, from being harmed during the pendency of a stay pending appeal. This argument necessarily fails given the facts and circumstances of Magnale I and this case. The Bankruptcy Code not only contemplates, but requires, adequate protection payments to secured creditors for the use and possession of their collateral. As Kinderhook and FSA point out, Debtor could not abide by this basic requirement. Moreover, it is evident that Kinderhook will suffer substantial injury in the face of a stay pending appeal because Debtor's conduct has caused Kinderhook's debt to increase exponentially, not only by means of accrued interest, real property tax payments, and forced place insurance costs, but also by requiring Kinderhook to incur substantial and unnecessary additional expenses in this case and in the foreclosure action, including attorney's fees and publication costs, in order to enforce its lawful contractual rights. It bears repeating that Debtor has made only two Court-ordered payments to Kinderhook for the use and occupancy of the Property since 2014.

Debtor continues to focus on the speculative future equity, notwithstanding that the parties' appraisals are worlds apart and Debtor has been unable to secure either a buyer or DIP financing

to satisfy Kinderhook's secured debt, without taking into account any additional holding costs to be borne by Kinderhook. While any prospective benefit to Debtor or other creditors from a sale or refinancing is speculative at best, as recognized by FSA, the harm to Kinderhook is ongoing. Under these facts and circumstances, it is evident that further delaying Kinderhook's impending foreclosure sale of the Property would impose further financial harm on Kinderhook and adversely affect its interests.

3. *Success on the Merits*

The proper standard governing the "strength-of-the-case component" in determining whether to grant a motion for a stay pending appeal of a bankruptcy court order is a substantial possibility of success on the merits. *In re Gen. Credit Corp.*, 283 B.R. 658, 659 (S.D.N.Y. 2002). Debtor must therefore show that the Court's LDO and Stay Order are erroneous and, thus, substantially likely to be reversed on appeal.

Debtor's main argument in support of its Motion is that, before granting § 362(d) relief to Kinderhook, the Court should have conducted a full evidentiary confirmation hearing with respect to its Amended Plan. According to Debtor, the Court's failure to do so somehow violated Debtor's due process rights and led the Court to allegedly make improper findings of fact and conclusions of law. The Court disagrees with Debtor's interpretation of its obligations under § 362(d)(1) and (d)(4).

Due process requires that parties in interest be given notice and an opportunity to be heard after due notice before they may be bound by a court order. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 81-82 (1972); *Mazza v. Bank of N.Y. Mellon (In re Mazza)*, Civil Action No. 14-cv-6423, 2015 U.S. Dist. LEXIS, at *20 (E.D. Pa. Sept. 30, 2015). In this case, the Court conducted multiple hearings, including one during which Mr. Giombetti testified at length as to Debtor's projections and financials, prior to granting Kinderhook stay relief.

Further, § 362 requires "notice and a hearing," but does not require a formal evidentiary hearing. *See In re Mazza*, 2015 U.S. Dist. LEXIS, at *17-21 (rejecting debtor's argument that she was denied due process and concluding that the bankruptcy court had sufficient evidence to find a scheme involving multiple bankruptcy filings timed to delay or hinder the bank's foreclosure efforts). When deciding a § 362(d)(4) motion, the Court can draw a permissible inference of a scheme to hinder, delay, and defraud based on the mere timing and filing of several bankruptcy cases. *Id.* at *16 (citing *In re Blair*, No. 09-76150, 2009 Bankr. LEXIS 4195, at *12-13 (Bankr. E.D.N.Y. Dec. 21, 2009)). Moreover, "a bankruptcy court has the power to grant prospective relief from the automatic stay 'independent of section 362(d)(4), by virtue of 11 U.S.C. §§ 105(a) and 362(d).'" *Id.* at *21 (quoting *In re Stoltzfus*, No. 09-11904, 2009 Bankr. LEXIS 2634, at *17 (Bankr. E.D. Pa. Mar. 30, 2009)). Accordingly, Debtor's due process challenge fails.

Debtor's secondary argument in support of its Motion is that it can now obtain the necessary DIP financing to propose a new plan that would pay off Kinderhook within the next month or two. At oral argument, Debtor's counsel focused heavily on events that have occurred and efforts made by Debtor since the Court's issuance of the LDO and Stay Order. Unlike a motion for reconsideration, which Debtor did not pursue, the purpose of a stay pending appeal is "to maintain the status quo and to prevent harm to the moving party between the time the original order was entered and the decision on appeal." *In re Tolco Properties, Inc.*, 6 B.R. 490, 491 (Bankr. E.D. Va. 1980). "A stay is not for the purpose of giving the Debtor another chance to establish the proper framework for a reorganization; a stay is to prevent the enforcement of the Order of the Court, and thus maintain the status quo." *Id.* at 492. Accordingly, as the court in *Tolco* similarly found, Debtor's argument that a reorganization is now feasible because it is in negotiations with a potential new lender is unpersuasive.

Neither Debtor's due process argument nor its new evidence argument satisfy this factor of the *Hirschfeld* test. Moreover, Debtor has failed to point to anything in the record or case law that supports any of its assertions of error. Debtor does not and cannot dispute that it failed to do the following: (1) make ongoing mortgage payments to Kinderhook; (2) timely comply with the Interim Order; (3) maintain insurance for the Property, naming Kinderhook as an additional loss payee; (4) provide proof of timely payment to the real property taxing authorities for real estate taxes; and (5) secure DIP financing. The Court need not restate its reasoning and analysis set forth in the LDO. Based on the same, the Court believes that there is little likelihood Debtor can or will succeed on appeal.

4. *Public Interest*

Finally, the Court must look to the public interest. The Court is particularly cognizant of both the interests of judicial economy and the finality of litigation. *In re Kleinman*, 150 B.R. 524, 529 (Bankr. S.D.N.Y. 1992). "The Bankruptcy Code contemplates that matters involving the automatic stay are to be decided with expedition." *In re Liggett*, 118 B.R. 219, 223 (Bankr. S.D.N.Y. 1990) (citing 11 U.S.C. § 362(e)). Here, Debtor has had the benefit of the automatic stay since Magnale I in 2015. Since that time, Debtor has simultaneously failed to make mortgage or insurance payments to or on behalf of Kinderhook and it has failed to make real property tax payments to the real property taxing authorities. The Giombettis have also had the benefit of residing at the Property rent free during that timeframe. The dispute between Debtor and Kinderhook has been litigated in state court through Kinderhook's foreclosure action. Public policy favors both judicial economy, particularly in bankruptcy proceedings, and finality in litigation, including foreclosure actions. In this case, the public interest would not be served by granting Debtor a stay pending appeal.

*VI. Conclusion*

In conclusion, the Court is not persuaded that the extraordinary relief of a stay pending appeal is justified in this case.

Accordingly, it is hereby

ORDERED, that Debtor's Motion is DENIED.

It is SO ORDERED.

Dated: April 3, 2018
Utica, New York

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge